Citation Nr: 1761231 
Decision Date: 12/29/17 Archive Date: 01/02/18

DOCKET NO. 09-06 487 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in St. Louis, Missouri


THE ISSUE

Entitlement to a total disability rating based on individual unemployability due to service-connected disabilities (TDIU), on a substitution basis.


REPRESENTATION

Appellant represented by: Sean A. Ravin, Esq.


ATTORNEY FOR THE BOARD

K. Kleponis, Associate Counsel

INTRODUCTION

The Veteran served on active duty from February 1954 to January 1956. He died in February 2010. 

This matter comes before the Board of Veterans' Appeals (Board) on appeal from an October 2007 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO) in St. Louis, Missouri. 

In March 2012, the RO granted the request of the Veteran's surviving spouse to be substituted as the appellant in this case for purposes of processing the Veteran's claim to completion. 38 U.S.C. § 5121A (2012); 38 C.F.R. § 3.1010(b) (2017). 

In a July 2016 decision, the Board granted a 50 percent rating for posttraumatic stress disorder (PTSD). The Board remanded the issue of entitlement to TDIU for a referral to the Director of the Compensation Service for extraschedular consideration. 38 C.F.R. § 4.16(b) (2017). A review of the record shows that the RO has complied with all remand instructions. Stegall v. West, 11 Vet. App. 268 (1998).

(In a separate July 2016 decision, the Board denied service connection for the cause of the Veteran's death and entitlement to dependency and indemnity compensation (DIC) under 38 U.S.C. § 1318. The appellant appealed the decision to the U.S. Court of Appeals for Veterans Claims. In May 2017, the Court dismissed the appeal. Thus, these issues are not before the Board.).


FINDINGS OF FACT

1. Prior to his death, the Veteran was service connected for PTSD, rated as 30 percent disabling from February 7, 2003, and as 50 percent disabling from March 10, 2009; tinnitus, rated as 10 percent disabling from February 7, 2003; and bilateral hearing loss, rated as zero percent disabling. The Veteran's combined disability rating was 40 percent from February 7, 2003, and 60 percent from March 10, 2009.

2. The Veteran's service-connected disabilities did not render him unable to secure or follow a substantially gainful occupation.


CONCLUSION OF LAW

The criteria for entitlement to TDIU have not been met. 38 U.S.C. §§ 1155, 5107 (2012); 38 C.F.R. §§ 3.340, 3.341, 3.1010, 4.1, 4.2, 4.3, 4.10, 4.15, 4.16 (2017).


REASONS AND BASES FOR FINDINGS AND CONCLUSION

Veterans Claims Assistant Act of 2000 (VCAA)

When VA receives a complete or substantially complete application for benefits, VA must inform a claimant of the information and evidence they are expected to provide, as well as the information and evidence VA will seek to obtain on their behalf. 38 U.S.C. § 5103 (2012); 38 C.F.R. § 3.159(b)(1) (2017). VA is also required to advise a claimant of the information and evidence not of record that is necessary to substantiate their claim. 38 U.S.C. §§ 5103(a); see Quartuccio v. Principi, 16 Vet. App. 183, 187 (2002). 

In cases where an individual has requested to substitute for a deceased claimant, special notice is required of the decision on their eligibility as a substitute, and special notice may be required of the nature of the pending claims, only if the required notice was not sent to the deceased claimant. 38 C.F.R. §§ 3.1010 (e)(2), (f)(1) (2017). 

VA is also required to make reasonable efforts to help a claimant obtain evidence necessary to substantiate their claim. 38 U.S.C. § 5103A; 38 C.F.R. § 3.159(c). This duty requires the Secretary to assist in obtaining relevant records that the claimant has adequately identified to the VA and to obtain a VA examination or opinion if it is necessary to make a decision on the claim. 38 U.S.C. § 5103A; 38 C.F.R. § 3.159(c).

Regarding VA's duty to notify, the Veteran was notified of how to establish his claim for TDIU, what evidence he needed to provide, and what evidence VA would obtain for him in a June 2007 letter. The appellant was notified of the decision granting her request for substitution by a March 2012 letter. The Board finds VA's duty to notify has been met for this claim. 

Regarding VA's duty to assist, VA both obtained the necessary relevant records and provided multiple exams for the Veteran. In this case, VA has obtained the Veteran's relevant service treatment, personnel records, and identified private treatment records. Neither the Veteran, nor the appellant as substitute, has made any statement to indicate that the Veteran ever applied for Social Security disability benefits. VA also provided the Veteran with two examinations in December 2006 and June 2009 to determine the severity of his service-connected disabilities. 

Neither the Veteran nor her representative has identified any outstanding, relevant evidence and none is evident from a review of the record. Moreover, neither the appellant nor her attorney has raised any issues with the duty to notify or duty to assist. See Scott v. McDonald, 789 F.3d 1375, 1381 (Fed. Cir. 2015) (holding that "the Board's obligation to read filings in a liberal manner does not require the Board . . . to search the record and address procedural arguments when the veteran fails to raise them before the Board."); Dickens v. McDonald, 814 F.3d 1359, 1361 (Fed. Cir. 2016) (applying Scott to a duty to assist argument). The Board has considered the arguments of the Veteran's attorney to the effect that the Director's extraschedular review is inadequate. As the Board considers the issue de novo, however, any inadequate review does not constitute a duty to assist error. 


Applicable Law

TDIU

Where the scheduler rating is less than total, a total disability rating may still be assigned when the disabled person is, in the judgement of the rating agency, unable to follow a substantially gainful occupation as a result of the service-connected disability; provided that, in part, if there is only one such disability, the disability shall be rated at 60 percent or more, and that, if there are two or more disabilities, there shall be at least one disability rated 40 percent or more, and a combined disability rating of 70 percent or more. 38 C.F.R §§ 3.340, 3.341(a), 4.16 (a) (2017). 

It is the established policy of VA that all veterans who are unable to secure and follow a substantially gainful occupation by reason of service-connected disabilities shall be rated totally disabled. Thus, in any case where the veteran is unemployable by reason of service-connected disabilities but has failed to meet the percentage standards discussed above, rating boards will submit the case to the Director of Compensation and Pension Service, for extra-schedular consideration under 38 C.F.R. § 4.16(b). 

Entitlement to a total rating must be based solely on the impact of service-connected disabilities on the ability to keep and maintain substantially gainful employment. See 38 C.F.R. §§ 3.340, 3.341, 4.16. In reaching such a determination, the central inquiry is "whether the Veteran's service connected disabilities alone are of sufficient severity to produce unemployability". Hatlestad v. Brown, 5 Vet. App. 524, 529 (1993). For VA purposes, the term "unemployability" is synonymous with an inability to secure and follow a substantially gainful occupation. VAOPGPREC 75-91; 57 Fed. Reg. 2317 (1992). Consideration may be given to the level of education, special training, and previous work experience in arriving at a conclusion. Individual unemployability, however, must be determined without regard to any nonservice-connected disabilities or advancing age. 38 C.F.R. §§ 3.341(a), 4.16, 4.19 (2017). The ultimate question is whether the Veteran, in light of his service connected disabilities, is capable of performing the physical and mental acts required by employment, not whether he can find employment. Van Hoose v. Brown, 4 Vet. App. 361 (1993). 

Global Assessment of Functioning (GAF) Scores

According to the Fourth Edition of the American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders, a GAF score is a scale reflecting the "psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." Carpenter v. Brown, 8 Vet. App. 240, 242 (1995); Richard v. Brown, 9 Vet. App. 266 (1996) (citing the American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed. 1994) (DSM-IV)). 

The Board notes that an interim final rule was issued on August 4, 2014, that replaced the DSM-IV with the DSM-5. GAF scores have been removed from the DSM-5. The provisions of this interim final rule, however, do not apply to the instant case, as these provisions only apply to applications for benefits that are received by VA or that are pending before the RO on or after August 4, 2014. See 79 Fed. Reg. 45,093, 45,094 (Aug. 4, 2014). VA adopted as final, without change, the interim final rule, effective March 19, 2015. 80 Fed. Reg. 53, 14,308 (March 19, 2015). 

A GAF score of 61 to 70 represents mild symptoms (e.g., depressed mood and mild insomnia) or some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, and has some meaningful interpersonal relationships. A GAF score of 51 to 60 represents moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with coworkers). A GAF score of 41 to 50 indicates serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job). A GAF score of 31 to 40 indicates some impairment in reality testing or communication (e.g., speech is at times illogical, obscure, or irrelevant), or a major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood (e.g., depressed man avoids friends, neglects family, and is unable to work). Lesser scores reflect increasingly severe levels of mental impairment. American Psychiatric Association's Diagnostic and Statistical Manual for Mental Disorders, 4th Ed. (1994) (DSM-IV).
While particular GAF scores are not contained in the VA schedule of ratings for mental disorders, they are a useful tool in assessing a veteran's disability and assigning ratings. 38 C.F.R. § 4.130 (2017). However, they are just one of many factors considered when determining the appropriate rating.

Benefit of the Doubt Rule

The standard of proof to be applied in a decision on claims for VA benefits is set forth in 38 U.S.C. § 5107(b). Under that provision, VA shall consider all information and lay and medical evidence of record in a case before the Secretary with respect to benefits under laws administered by the Secretary. When there is an approximate balance of positive and negative evidence regarding any issue material to the determination of a matter, the Secretary shall give the benefit of the doubt to the claimant. 38 U.S.C. §5107(b); see also 38 C.F.R. §§ 3.102, 4.03. "This unique standard of proof is in keeping with the high esteem in which our nation holds those who have served in the Armed Services. It is in recognition of our debt to our veterans that society has through legislation taken upon itself the risk of error when, in determining whether a veteran is entitled to benefits, there is an 'approximate balance of positive and negative evidence.' By tradition and by statute, the benefit of the doubt belongs to the veteran." Gilbert v. Derwinski, 1 Vet. App. 49, 54 (1990).

Analysis

The appellant contends that the Veteran was unable to maintain substantially gainful employment as the result of his service-connected PTSD.

Applying the criteria set forth above to the facts of this case, the Board finds the preponderance of the evidence is against the assignment of schedular TDIU. As noted, the Veteran was service-connected for PTSD, which was rated as 30 percent disabling from February 7, 2003, and as 50 percent disabling from March 10, 2009; tinnitus, rated as 10 percent disabling from February 7, 2003; and bilateral hearing loss, rated as zero percent disabling. The Veteran's combined disability rating was 40 percent from February 7, 2003, and 60 percent from March 10, 2009. See 38 C.F.R. § 4.25. Thus, the Veteran did not meet the percentage requirements for schedular TDIU. 38 C.F.R. § 4.16(a). Neither the appellant nor her attorney contends otherwise. 

Although the legal requirements for a schedular TDIU are not met, it is the established policy of VA that all veterans who are unable to secure and follow a substantially gainful occupation by reason of service-connected disabilities shall be rated totally disabled. Thus, the Board referred this case to the Director of Compensation and Pension Service, for extra-schedular consideration under 38 C.F.R. § 4.16(b). Having undertaken that action, the Board may now proceed with consideration of TDIU on an extraschedular basis. 

After so doing, the Board also finds that the preponderance of the evidence is against the assignment of an extra-schedular TDIU. Turning to the medical evidence of record, the Veteran was first diagnosed with PTSD in October 2003 by his private physician. At the time of the diagnosis, the physician did not offer an opinion as to the effect of the Veteran's PTSD on his ability to work. 

The Veteran underwent numerous examinations and frequent treatment through VA for his PTSD. As part of his treatment and evaluation, the Veteran was assigned GAF scores. 

The Veteran was initially evaluated for PTSD with VA in March 2004. Prior to the examination, the Veteran had begun taking medication to treat his condition. The examiner reviewed the Veteran's employment history after separation from service, took statements from the Veteran and the appellant on the Veteran's symptoms, and recorded the Veteran's demeanor and presentation at the interview. The examiner did specifically note the Veteran's statements that he had been fired from his job as a bailiff in December 2003. Even considering this evidence, the evaluator determined that based on all the information the Veteran and the appellant provided at the time, that the Veteran's diagnosed PTSD only caused a mild-to-moderate impairment in social and occupational functioning. The examiner assigned a GAF score of 64, reflective of some difficulty in occupational functioning. 

The Veteran received regular treatment from the VA for his PTSD between his initial examination in March 2004 and October 2006. At many of these treatments, the Veteran's GAF score was adjusted to account for changes in his overall condition. 

During this period, the Veteran received GAF scores of: 55 (March 2004), 65 (November 2004), 70 (September 2005), 70 (March 2006), 65 (September 2006), and 65 (October 2006). These treatment records indicate some improvement in the Veteran's overall functioning for the period. All scores were assessed after in-person interviews, where the Veteran's symptoms and current demeanor were assessed. Throughout these treatments, the Veteran consistently presented as oriented and alert, with normal thought content, fair impulse control, intact judgement, good hygiene, an appropriate affect, and an ability to independently care for himself. During these sessions he stated repeatedly that he was coping with his PTSD by traveling across the country with his wife to visit friends. Also during this period, the Veteran was attending group therapy sessions through VA. 

The Veteran had a VA examination related to a claim for an increased rating in December 2006. He reported that he was 72 years old and had retired in 2003. He had not worked since that time. After conducting an in-person interview with the Veteran, wherein the examiner took information on the current state of his symptoms, his functioning, and his interpersonal relationships, the examiner found that the Veteran's functional impairments "moderately reduced his social and industrial capacity." The examiner went on to assign a GAF of 64 when considering only the Veteran's PTSD and an overall score of 60 when including other related disorders. The examiner did consider the Veteran's statements that he believed his condition to be worse; however the examiner opined that the Veteran's overall functional level had remained generally consistent and that his condition at the time did not reflect a worsening of his condition.

In April 2007, the Veteran submitted an opinion on the severity of his condition produced by a private physician. The opinion is grounded on the Veteran's responses to questionnaires provided by the examiner and an in-person examination. The examiner concluded, after reviewing all the evidence provided by the Veteran, that the Veteran's PTSD and all related symptoms constituted a partial disability of 70 percent. The examiner did find the Veteran unemployable, but only after factoring in the Veteran's non-service connected Attention-Deficit Disorder (ADD). The examiner assigned an overall GAF score of 52, which included consideration of the nonservice-connected ADD along with the service-connected PTSD. 

The Veteran continued to receive regular treatment for PTSD from VA after this examination between June 2008 and October 2009. See VA outpatient records from June 2008 to October 2009, located electronically in the VA Legacy Content Manager. During this period, the Veteran's GAF score was again adjusted at his regular appointments based on his current symptomatology. He received scores of: 60 (June 2008), 60 (November 2008), 65 (July 2009), and 55 (October 2009). All of these scores were assessed after in-person interviews, where the Veteran's symptoms and current demeanor were assessed. Over the course of these treatments, the Veteran consistently presented as oriented and alert, with normal thought content, fair impulse control, and intact judgement, and with an ability to independently care for himself. While he did present with poor hygiene on two occasions, the Veteran stated he was only bathing weekly for fear of falling in the shower. The Veteran's appointments were scheduled around his trips to and from Florida where he spent winters with his wife. The Veteran was not attending any noted therapy sessions during this period. The Veteran was also dealing with issues at this time relating to nonservice-connected chronic obstructive pulmonary disease (COPD) which required him to travel everywhere with an oxygen tank and limited his mobility. 

In June 2009, the Veteran underwent another VA examination in relation to a claim for an increased rating for his PTSD. He reported that he had retired in 2003. After conducting an in-person interview of the Veteran, in which the current state of his symptoms, his functioning, and his interpersonal relationships were discussed, the examiner concluded that the Veteran's "overall occupational and social functioning does not appear to be significantly different and is perhaps slightly improved as compared to the findings" at his 2006 VA examination. The examiner relied on the fact that the Veteran, who had taken to traveling the country in an RV to visit friends with the appellant, had a "significant therapeutic benefit." The examiner also noted that the Veteran had not ever been hospitalized for his PTSD. The examiner assigned a GAF score of 61 and found that the Veteran had mild to moderate symptoms and impairment in occupational and social functioning. 

The record reflects the Veteran had completed the 10th grade. After separation from service, he worked for a time as a truck driver for the St. Louis city government. He then spent almost 36 years as a law enforcement officer, working 12 years with the county police department, 20 as a special investigator for the district attorney, and 3 and a half years as a courtroom bailiff before retiring in 2003. 

The April 2007 private medical opinion, which was the only one that found the Veteran unemployable and more than mildly to moderately impaired in his occupational functioning, came to that conclusion only in considering all of the Veteran's disabilities, including his nonservice-connected ADD. 38 C.F.R. §§3.341 (a), 4.16, 4.19; Van Hoose, 4 Vet. App. 361. 

The Veteran did not report any attempts to obtain further employment after separation from his position as a bailiff. He consistently reported satisfaction with retirement and his developed love of travelling with his wife across the United States in his RV to visit friends. 

The Board acknowledges the appellant's contention that the Veteran's results from his June 2009 VA examination would have been lower but for her coaching and preparation with the Veteran beforehand. The appellant has also stated that the Veteran experienced flashbacks, nightmares, and that she had a hard time getting along with him, particularly with regard to his personal hygiene and that all these issues were worse than recorded at the June 2009 examination. The appellant is competent to relay her personal observations about the Veteran's symptoms and the Board does find the appellant's statements credible and relevant. Jandreau v. Nicholson, 492 F.3d 1372 (Fed. Cir. 2007).

The Board must analyze the competency, credibility, and probative value of all the evidence, account for the evidence that it finds to be persuasive or unpersuasive, and provide the reasons for its rejection of any material evidence favorable to the claimant. See Caluza v. Brown, 7 Vet. App. 498, 506 (1995).

As set forth above, multiple VA examiners and evaluators have concluded that the Veteran's PTSD did not render him any more than mildly to moderately impaired in his social or occupational functioning. The Board finds these medical opinions are persuasive and assigns them great probative weight. These opinions were rendered by medical professionals who have experience diagnosing and treating mental disorders. In addition, the examiners addressed the Veteran's and the appellant's contentions when presenting their findings and explained the rationale for their conclusions which are consistent with the evidence of record. Nieves-Rodriguez v. Peake, 22 Vet. App. 295 (2008) (discussing factors for determining probative value of medical opinions). The Board assigns great probative weight to the medical evidence in this case because, when taken as a whole, it shows an overall consistent picture of the impact of the Veteran's disability on his social and occupational functioning. 

Although the appellant's statements carry some probative weight, the Board finds that they are outweighed by the medical evidence of record. King v. Shinseki, 700 F.3d 1339, 1345 (Fed. Cir. 2012). The medical evidence is consistent in its assessments of the Veteran's condition over the entire appellate period. Further, subsequent to the June 2009 examination, which the appellant speculates would have had a worse assessment but for her coaching, the Veteran was seen two more times for treatment at the VA. At these treatments, his assessment of having mild to moderate occupational and social functioning was continued with GAF scores of 65 and 55. His nightmares, flashbacks, reduced level of personal hygiene, and disagreements with his wife were considered in determining his overall assessment at each of his appointments. Even when considering this evidence, the examiner found only mild to moderate impairment with his social and occupational functioning. In recognition of the severity and impairment caused by his service-connected disability, the Veteran was in receipt of a 50 percent evaluation for his PTSD. 

Additionally, the Board finds that the record does not present any unusual factors, such as frequent periods of hospitalization, which might serve as a predicate for a finding of unemployability. The record fails to demonstrate that the Veteran had been hospitalized for his service-connected disability during the appellate period. 

The Veteran's service-connected disability was not, in the Board's determination, so severely disabling as to have rendered him or the average person similarly situated, unable to secure or follow substantially gainful employment, nor does the most probative medical evidence of record reflect that his service-connected condition rendered him individually unable to follow any substantially gainful occupation. 

Taking this evidence into account, the claim for entitlement to TDIU is denied. The Board acknowledges that the record indicates that the Veteran was unemployed after 2003 and that his PTSD certainly caused some occupational deficiency. However the most probative evidence of record fails to demonstrate that he was precluded from substantially-gainful employment based upon his PTSD alone. 

The Board has also considered the arguments of the Veteran's attorney to the effect that the Veteran's retirement in 2003 was recommended by his superiors after he displayed outbursts of anger, which impeded his ability to effectively perform his duties. The Board finds that these facts, in and of themselves, do not provide a basis upon which to grant the claim. Although the Veteran reportedly retired from his position as a bailiff due to outbursts of anger, the record reflects that he was not incapable of obtaining or maintaining employment. Although the Veteran's PTSD may have interfered with the effective performance of a stressful job involving frequent interactions with others such as that of a bailiff, the most probative evidence of record shows that he was not unable to obtain or retain other forms of substantially gainful employment. 

The Board finds that the evidence weighs against the conclusion that the Veteran's service-connected disabilities precluded him from engaging in substantially-gainful employment, and the claim must be denied. 38 U.S.C. §5107 (2012); Gilbert, 1 Vet. App. at 54. 


ORDER

Entitlement to TDIU is denied.



____________________________________________
K. Conner
Veterans Law Judge, Board of Veterans' Appeals


Department of Veterans Affairs